RECEIVED
FEB 28 2019
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LOUISIANA DIVISION SONS of CONFEDERATE VETERANS | CIVIL ACTION NO. 1:16-1142 |
| VERSUS | |
| CITY OF NATCHITOCHES, ET AL. | JUDGE DEE D. DRELL<br>MAG. JUDGE PEREZ-MONTES |

## RULING

Before the court are two motions for summary judgment: one filed by the Historic District Business Association, Inc. ("HDBA") (Doc. 96) and the second filed by the City of Natchitoches, Mayor Lee Posey, Police Chief Micky Dove, and Samantha Bonnette (Doc. 102). For the reasons set forth herein, we find the motions should and will be GRANTED.

### I. BACKGROUND

This lawsuit arises out of the denial of an application submitted by the Louisiana Division Sons of Confederate Veterans (SCV) to march in the Christmas Festival of Lights Parade (Christmas Parade) in Natchitoches, Louisiana in December 2015. The Christmas Parade is one of many events held during the Christmas Festival of Lights (Christmas Festival), an annual event held in Natchitoches along the bank of the Cane River to celebrate the Christmas season. The Christmas Festival, which has been held for nearly a century has evolved over time and seen various organizers. The most recent organization to host the Christmas Festival and Christmas Parade is the HDBA; a not for profit organization whose mission is to generate tourism and commerce for the businesses in Natchitoches historical district. The HDBA volunteered in 2014

to take over the coordination and presentation of the Christmas Festival and all its events to further to further this mission.

To ensure that the Christmas Festival ran smoothly, the City of Natchitoches passed Ordinance No. 035 of 2014, which created a Cooperative Endeavor Agreement that documented the division of responsibilities between the City and the HDBA with respect to the Christmas Festival. The City agreed to provide for the general welfare by affording police and fire protection, and electrical and sanitation services, as well as to erect barricades and ticket booths and provide music equipment. The HDBA coordinated all details of the Christmas Festival and its events, including the Christmas Parade.

In 2015, SCV applied to march in the 89th Christmas Festival of Lights Parade. SCV participated in the Christmas Parade in years prior and anticipated it would continue to do so. However, in a letter dated November 4, 2015, Fred Terasa, the Director of the HDBA Christmas Parade Committee, notified Paul Grambling that SCV's application was denied. Though no explanation for the decision was set forth in the letter, SCV was told by HDBA Christmas Festival Director Lee Waskom that the decision was based upon Mayor Posey's November 2, 2015, letter to the HDBA Christmas Festival Committee.[1]

The November 2, 2015, letter provided, in relevant part:

> In the past several months there has been considerable discussion regarding the Confederate Flag and what it represents. For many, the flag represents a symbol of patriotism, faith, and family. However, public comments have shown that many members of the general public find the Confederate Flag to be offensive, and the City believes these comments to be reasonable. The City has determined that a significant portion of the public associate the Confederate Flag with organizations advocating expressions of hate, racism, and intolerance directed toward people or groups that is demanding to those people or groups. The City is also concerned that

---

[1] Several references are made in the motions for summary judgment that the application was also denied because the SCV failed to acknowledge that it would adhere to the HDBA's Parade Standards of Excellence. The Court finds this reasoning to be an afterthought and not the actual basis for the denial. Accordingly, it will not be addressed in detail.

2

> the display of the Confederate Flag in the Natchitoches Christmas Festival Parade could be taken by the public as an endorsement of a symbol that is viewed as racially inflammatory.
>
> The City believes that a visible display of the Confederate Flag could cause substantial disruption or interference with the parade. Therefore, we respectfully request that your committee not allow the Confederate Flag and all its variations to be displayed in the Christmas Festival Parade.

(Doc. 110-8).

The City's belief that "substantial disruption or interference with the parade" was likely resulted from the receipt of complaints regarding the Confederate Flag by Mayor Posey in mid to late 2015. The first complaint received was from the Natchitoches Parish Voters and Civil League, Inc. The League attended the Natchitoches City Council Meeting on August 10, 2015, and presented the Mayor and members of the City Council with a Resolution the League adopted on July 14, 2015. The Resolution provided that they had been the "recipient of numerous contacts regarding the offensive nature of the Civil War battle enactments and prominent display of the Confederate Flag featured consistently for a number of consecutive years in the Annual Christmas Festival Parade." The League resolved to request that the "Natchitoches Christmas Festival Committee …delete the Civil War re-enactments and display of the Confederate Flag from the Christmas Festival Parade from this time forward." The second was received from a group of African Americans in the community to voice their objection to the display of the Confederate Flag in the Christmas Parade.

Mayor Posey and Chief Dove also heard rumblings that the Black Panthers might protest the Christmas Parade and that sit-ins were likely. Sensing a real possibility of protests and potential violence, Mayor Posey held meetings on October 26 and 28, 2015, to discuss security concerns. Chief Dove attended both meetings and the Director of the Christmas Festival of Lights, Lee Waskom, attended the latter.

3

Armed with the verbal concerns expressed by the Mayor and his letter to the HDBA Christmas Festival Committee dated November 2, 2015, Mr. Waskom advised members of the committee that he planned to honor Mayor Posey's request unless there was considerable objection. No opposition was voiced, so the request was deemed accepted. Mr. Waskom issued a letter to Mayor Posey dated November 3, 2015, acknowledging receipt of the letter and advising the Festival Committee would comply and Mr. Terasa, issued his November 4, 2015, letter advising SCV that its application for participation was denied.

On August 4, 2016, SCV filed this lawsuit alleging the defendants, "CITY OF NATCHITOCHES, LOUISIANA, LEE POSEY Mayor, City of Natchitoches, JOHN DOES ONE THRU THREE, Members of the Christmas Festival Committee Who are Officially Affiliated With the City of Natchitoches" (Doc. 1) infringed upon the organization's rights under the First and Fourth Amendments to free speech and due process, in violation of 42 U.S.C. §1983 of the Civil Rights Act.

On April 13, 2017, SCV amended its complaint. Part of that amendment included a paragraph referencing the HDBA but not adding it as a party. (Doc. 30). A few days later, a "Second-Amended Complaint" (Doc. 32) was filed adding City Chief of Police Mickey Dove and City employee, Samantha Bonnette, as defendants. It was not until September 29, 2017, that SCV officially named HDBA as a defendant via SCV's "Third-Amended Complaint." (Doc. 73).

## II.  LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir.2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. Once done, the burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir.1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Anderson v Liberty Lobby, 477 U.S. at 247.

### III. ANALYSIS

The Civil Rights Act of 1871 creates a private right of action to redress the violation of constitutional rights or federal law by those acting under color of state law. 42 U.S.C. §1983. To prevail on a §1983 claim, a plaintiff must prove a person acting under color of state law deprived him/her of a right secured by the Constitution or laws of the United States. In Monell v. City of New York City Dept. of Social Services, 436 U.S. 658 (1978), the Supreme Court held

5

municipalities and other local governmental bodies can be "persons" within the meaning of Section 1983. Id. at 689, quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978).

### A. Claims against Mayor Posey, Chief Dove, and Ms. Bonnette in their official capacities

SCV asserts claims against Mayor Posey, Chief Dove, and Ms. Bonnette in their official capacities. Claims against officials in their official capacity are treated as claims against the City of Natchitoches. Kentucky v. Graham, 473 U.S. 159 (1985). Because the City of Natchitoches is named as a party in this suit, the claims against Mayor Posey, Chief Dove, and Ms. Bonnette in their official capacities are redundant and will be dismissed. See Flores v. Cameron County, Texas, 92 F.3d 258 (5th Cir.1996).

### B. Claims against the City of Natchitoches

A municipality cannot be held "vicariously liable under §1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 122 (1992). See also Monell, 436 U.S. at 694. The scope of liability of a municipality is limited to those instances where the deprivation resulted from that municipality's custom, policy or practice. Id. Thus, municipal liability under §1983 lies only where there is proof of: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom. Harris v. Jackson Cty., Mississippi, 684 Fed.Appx. 459, 463 (5th Cir.2017).

> Existence of a policy can be shown in two primary ways: (1) the existence of an officially adopted policy, regulation, or decision promulgated by individuals with policymaking authority; or (2) a persistent, widespread practice of City officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. A single decision by a policy maker may also, under certain circumstances, constitute a policy for which a municipality may be liable.

6

> However, this single incident exception is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker.

Id. (Internal quotations and citations omitted).

   i.   Mayor Posey

SCV contends Mayor Posey established a policy when he issued the November 2, 2015, letter to the HDBA, an organization it worked closely with to host the Christmas Festival, as set forth in the Cooperative Endeavor Agreement. Though SCV is correct that the City and HDBA entered into the Cooperative Endeavor Agreement pursuant to City of Natchitoches Ordinance No. 035 of 2014, neither the Ordinance nor the Cooperative Endeavor Agreement provided any authority for the mayor to establish policies on behalf of the City.

The City Ordinance allows the City and the HDBA to enter into the Cooperative Endeavor Agreement which establishes a division of labor for the Christmas Festival. The HDBA is responsible for "arranging and coordinating" the Christmas Festival and all of its events, while the City is tasked with providing services which "promote, protect, and preserve the general welfare, safety, health, peace, and good order of the City." The agreement to provide services, most of which are provided any time an organization hosts an event on the riverbank or on Front Street, ends with the provision of those services. The City has no input as to how the Christmas Festival is organized. It provides the services pursuant to information it receives from the HDBA regarding its needs.

Because the City of Natchitoches is governed by a Home Rule Charter with a mayor and a five-person council comprising the executive and legislative branches respectively, an official policy would require the consent of the city council. There are no allegations nor any evidence that the mayor and city council worked together to ban SCV from marching in the Christmas Parade. Likewise, the record is devoid of facts which establish any policy or widespread practice

7

establishing a custom. Failing to establish either an official policy or custom, the only other possible way a policy exists is if Mayor Posey is a final policymaker.

While Mayor Posey is a policymaker for the City of Natchitoches, he must be a final policymaker for the "single decision" policy to apply. "[W]hether a particular official has final policymaking authority is a question of *state law*." Jett v. Dallas Indep. School Dist., 491 U.S. 707, 737 (1989) (internal quotations omitted) (emphasis in the original). The Home Rule Charter establishes the legislative branch of the city is the five-person council, not the mayor. Accordingly, Mayor Posey cannot establish policy for the City on his own.

For all of the foregoing reasons, the Mayor's November 2, 2015, letter does not constitute an official policy of the City of Natchitoches, and without an official policy, these claims warrant dismissal.

    ii.    Chief Dove

The SCV also attempts to classify Chief Dove as a policymaker for the City. However, the only policy articulated by SCV is Mayor Posey's letter. There are no facts nor any allegations connecting Chief Dove to that letter. The only involvement Chief Dove had with respect to the Christmas Parade was granting HDBA a permit. No other action and no input were provided by Chief Dove.[2]

    iii.    Ms. Bonnette

Attempts by SCV to establish liability for actions undertaken by Ms. Bonnette also fail as she was not a policymaker for the City. Ms. Bonnette was an employee of the City, but she had no policymaking authority and did not have any role in drafting the Mayor's November 2, 2015,

---

[2] SCV also argues that Chief Dove is liable in some way because he *might* have harassed, threatened, arrested or intimidated SCV had they shown up to march with their Confederate Flags. This speculation is insufficient to constitute actionable conduct. Accordingly, it will not be addressed.

letter. SCV argues she acted as an agent for the City to in ensure HDBA enforced the terms of letter, but SCV failed to present any evidence that Ms. Bonnette requested or ordered HDBA members to withhold their objections to banning the Confederate Flag.

Allegations that Ms. Bonnette's role as liaison between the HDBA Christmas Festival Parade Committee and the City allowed her to influence the decision to ban SCV from marching lacks merit for the same reasons. The evidence presented establishes her role as a liaison and nothing more. She had no vote on the parade committee as to whose applications were granted or denied, and when she asked for information regarding the applications that were denied, she was prohibited from accessing it.

SCV's failure to establish an official policy renders its §1983 claims meritless. All of its its claims under §1983 will be dismissed.

### C. Claims against the HDBA

    i. Statute of Limitations

HDBA argues that the third amended complaint, which named it as a defendant to this action, was filed beyond the one-year statute of limitations and cannot relate back to the original filing because the purpose of relation back under F.R.C.P. 15(c) (to address a mistake as to the proper party) is not present in this case. Rather, it is an instance where SCV identified a new defendant. In support, HBDA cites the seminal case in the Fifth Circuit regarding relation back, Jacobsen v. Osborne, 133 F.3d 315 (5th Cir.1998), which noted that adding a newly discovered defendant was not the type of situation contemplated under Rule 15(c). SCV argues in response, though vaguely, that the statute of limitations was tolled under Louisiana law as the two defendants are joint tortfeasors.

Federal courts look to Louisiana law for its tolling provisions, Burge v. Parish of St. Tammany, 996 F.2d. 786, 788 (5th Cir.1983), and Louisiana law provides that "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." La. Civ. Code art. 2324(C). In SCV's second amended complaint, it asserts at paragraph 6 that the City and HDBA were partners who were responsible for planning, organizing, and supervising the Festival Parade." (Doc. 32, p.3). However, SCV fails to allege that HDBA was liable for the acts complained of. Rather, it states in the second amended complaint:

> "Defendant City is directly liable for acts complained of herein due to the policies, practices, procedures and customs of its Office of the Mayor and its employees. Defendant City is further directly liable for acts complained of herein due to its enactment of the policy stated in a letter (dated November 2, 205) from the Office of the Mayor that violates Plaintiff's First and Fourteenth Amendment rights under the U.S. Constitution to march with Confederate Battle flags (to include its corporate logo) in the Defendant City's 89th Annual Natchitoches Christmas "Festival of Lights" Parade held on or about December 5, 2015. In any of his complaints, much less the third amended complaint, that HDBA is a joint tortfeasor. Not a single complaint asserts the defendants are jointly liable for the damages plaintiff allegedly sustained. Additionally, there was no mistake as to the identity of HDBA as a defendant. Plaintiff named John Does as individuals who participated on the parade committee but at no time sought to name an entity such as the HDBA. As such, relation back under Rule 15(c) is inapplicable.

(Id.) We do not find that SCV asserted in the original or first two amended complaints that HDBA was a supposed joint tortfeasor nor that it did anything wrong. It was only once it was named a defendant in amendment number three, that SCV alleged HDBA engaged in wrongdoing.

Even if the joint tortfeasor argument could be said to have legs, it would not work here. For interruption of prescription to have taken place as to HDBA, there would have to be in existence viable claims against the City and/or its employees. Prescription is not interrupted as to a joint tortfeasor if the claims against the primary defendant are dismissed. Renfroe v. State ex rel. Dept. of Transp. and Development, 809 So.2d 947 (La. 2002); Spott v. Otis Elevator Co., 601 So.2d 1355 (La. 1992).

Accordingly, we find that the claims against HDBA prescribed prior to it being named as a defendant in the third amended complaint. Even if the claims were not barred by the statute of limitations, the claims should be dismissed for reasons set forth *infra*.

ii. State Action

Plaintiff's cause of action is filed its pursuant to 42 U.S.C. §1983. Thus, SCV must establish it was denied a right secured by the Constitution or the laws of the United States, and the alleged deprivation was committed under color of state law. 42 U.S.C. §1983; Lugar v. Edmondson Oil Co., Inc., 475 U.S. 922, 937 (1982). Like the state action requirement of the Fourteenth Amendment, the "under color of state law" element of Section 1983 excludes from its reach "merely private conduct, no matter how discriminatory or wrong." Blum v. Yartesky, 457 U.S. 991, 1002 (1982) (quoting Shelley v. Kraemer, 334 U.S. 1, 13 (1948)). For state action to exist, the plaintiff must establish the alleged constitutional deprivation was "caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Lugar, 457 U.S. at 937.

SCV contends HDBA acted with the knowledge of and pursuant to the mayor's letter requesting the Confederate Flag not be displayed during the parade. SCV further contends the denial of its application to march in the parade was conduct "fairly attributable" to the state. To find that such state action occurred, the plaintiff must establish "a sufficiently close nexus between the state and the challenged action of the [defendants] so that the action of the latter may be fairly treated as that of the state itself." Blum, 457 U.S. at 1004 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 390 (1974) (internal quotation marks omitted). A close nexus exists only when the state "has exercised coercive power or has provided such significant encouragement, either

overt or covert, that the choice must in law be deemed to be that of the State." Blum, 457 U.S. at 1004. (quoting Flagg Bros., 436 U.S. at 164-165. Thus, the issue is whether HDBA's decision to deny SVC's application for participation in the December 5, 2015, parade is conduct "fairly attributable" to the state.

To determine whether otherwise private conduct is "fairly attributable" to the state, and thus considered state action, the courts employ three tests. Under the public function test, state action exists if the private defendant performs a public function that is traditionally the exclusive province of the state, state action exists. The state coercion test examines whether a state exercised coercive power of overt or covert encouragement to determine if state action exists. If a government has "so far insinuated itself into a position of interdependence with the [private defendant] that it was a joint participant in the enterprise," state action exists under the nexus/joint action test. Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir.1999).

 a. Public function

Under the public function test, a "private entity may be deemed a state actor when that entity performs a function which is traditionally the exclusive province of the state. While many functions have been traditionally performed by governments, very few have been "exclusively reserved to the state." Id., 180 F.3d at 241-42 (internal citations and quotation marks omitted). The mere fact the public benefits from a private action is insufficient to establish state action. United Auto Workers v. Gaston Festivals, Inc., 43 F.3d 902, 906-907 (4th Cir.1995).

As the Fifth Circuit has not examined nor addressed whether the operation of a parade or festival is a governmental function, much less one exclusively reserved to the states, we look to other circuit courts for instruction. In the Fourth Circuit Court of Appeals, the court found "[t]he government has not traditionally been the sole provider of community entertainment... Fairs and

festivals… have traditionally been administered primarily by private organizations, like churches, civil groups, or local business consortiums." Id. at 908. In Lansing v. City of Memphis, 202 F.3d 821, 828-89 (6th Cir.2000) and Villegas v. Gilroy Garlic Festival Association, 541 F.3d 950, 956 (9th Cir.2008) (*en banc*), both Circuit Courts failed to find the operation of a festival to be a governmental function reserved to the state.

The HDBA is the entity responsible for the Christmas Festival and the Christmas Parade. This fact is established by the Cooperative Endeavor Agreement which specifically states the HDBA runs all aspects of the parade except for those limited services the City provides to ensure the general welfare. This fact is further supported by the deposition testimony of various witnesses including Mayor Posey, HDBA President Lee Waskom, and City Finance Advisor Patrick Jones who all affirmed the HDBA organizes and runs the events.

    b. State compulsion

The state compulsion test provides for state action by private parties when a state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Bass, 180 F.3d at 242, citing Blum, 457 U.S. 991 (1982). This test is based on the degree of the state's influence over the private actor; thus, the test is broader in reach than the private function test. "Coercion" and "encouragement" refer to the "kinds of facts that can justify characterizing an ostensibly private action as private instead." Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288, 303 (2001). That is, did the private actor have a choice to refrain from engaging in the conduct?

Mayor Posey's letter was nothing more than a request to the HDBA to consider banning the Confederate Flag from the Christmas Parade. Mayor Posey testified in his deposition that he

13

knew the decision to ban the Confederate Flag was that of the HDBA and that it could deny his request. Mr. Waskom and Ms. Bonnette stated during their depositions that they understood the letter was a request of the HDBA and that it could vote to deny it. Instead, the Christmas Festival Parade Committee considered the request in light of the security concerns the City faced and decided it would honor the request.

SCV fails to show that there was coercion by any state actor to ensure the Confederate Flag was banned and there is certainly no evidence that the ban was intended to infringe upon the First Amendment rights of the SCV. Without such a showing, SCV cannot meet the state compulsion test.

      c. Nexus/joint action

Finally, under the nexus/joint action test, a private party is found to be a state actor where the government has "so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." Id. SCV attempts to establish an interdependence of the HDBA and the City by pointing to the Cooperative Endeavor Agreement, the City's membership in the HDBA, Ms. Bonnette's role on the Christmas Festival Committee, and fiscal arrangements between the HDBA and the City. However, none of these examples, alone nor in combination, evidence the interdependence needed to satisfy the nexus/joint action test.

The Cooperative Endeavor Agreement was established to ensure the Christmas Festival ran smoothly. The Agreement was desired by the City after it had a breakdown in communication with the prior, private, entity responsible for the Christmas Festival. The Agreement did not alter the fact a private entity (in this case the HDBA) organized and implemented plans for the Christmas Festival and its events. The Agreement simply set forth the specific function the City played.

14

SCV also argues the interdependence of the two entities is evidenced by the City's membership in the HDBA and Ms. Bonnette's role as a member of both the Christmas Festival and Christmas Parade committees. Though the City was a member of the HDBA, Mayor Posey had little involvement with the organization. Of any purported state actor, the most involved was Ms. Bonnette; yet, her role was limited. While she was a member of the HDBA and served on the Christmas Festival Committee and Parade Committee, she had no vote in Parade Committee matters. Her sole function on that committee was to act as a liaison to coordinate the provision of public works by the City.

The argument that there are financial ties between the two organizations, further substantiating interdependence, is equally unfounded. Deposition testimony consistently provided the HDBA was fiscally responsible for the Christmas Festival and the City did not pay any money from its budget to the HDBA for the event. HDBA raised funds throughout the year to host the Christmas Festival. Per the Cooperative Endeavor Agreement, it paid the City a sum from the profits which the City placed into its general fund to cover public works expenditures such as clean up. Though the City provided services for opening weekend, those expenses were covered by a grant obtained from the State of Louisiana to promote tourism.

There is simply no evidence before the court that HDBA was a state actor. Accordingly, as it is a private entity which did not engage in state action, the claims against it lack merit and must be dismissed.

**D. Fourteenth Amendment**

SCV argues its Due Process rights under the 14th Amendment were violated. While due process claims are actionable against the state and state actors, the Due Process Clause of the Fourteenth Amendment "offers no shield" against private conduct, "however discriminatory or

wrong." Jackson v. Metropolitan Edison Co., 419 U.S. at 390, citing Shelley v. Kraemer, 335 U.S. 1 (1948).

In the instant case, the City did not violate SCV's due process because it did not make the decision to deny SCV's application to march in the parade. That decision was made by HDBA, a private organization which we observe did not engage in state action. Accordingly, this claim fails as well.

### E. Punitive Damages

Finally, though SCV's claims lack merit and warrant dismissal, we believe it is worth noting that SCV's claims for punitive damages would fail in any event. Punitive damages may be assessed under §1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30 (1983).

SCV failed to produce evidence that the City, HDBA, or any of their employees/members engaged in any malicious conduct or acts of reckless or callous indifference to SCV's rights under the First Amendment. Even if they had, the City would also be immune as municipalities have been found incapable of forming the requisite intent to support such an award under §1983. City of New Port v. Fact Concerts, 453 U.S. 247, 267 (1981).[3]

### IV. CONCLUSION

Based on the foregoing, the defendants' motions for summary judgment (Docs. 96 and 102) will be GRANTED and SCV's claims will be dismissed with prejudice. The court will issue

---

[3] HDBA argues City of New Port would apply by extension to it because it is a private entity unable to form intent. While we found several cases outside of this Circuit discussing the application of punitive damages to private entities that engaged in state action, we did not find any case law supporting HDBA's position. As the dismissal of claims against HDBA renders the question moot, we reserve judgment on the issue.

16

a judgment in conformity with these findings.

**SIGNED** this 28th day of February 2019, at Alexandria, Louisiana.

**DEE D. DRELL, JUDGE**
**UNITED STATES DISTRICT COURT**