# United States Court of Appeals

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

August 21, 2020

Mr. Tony R. Moore
Western District of Louisiana, Alexandria
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

    No. 19-30223    LA Div Sons of Confdr Veterans v. City of
                                    Natchitoches, et al
                                    USDC No. 1:16-CV-1142

Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                                    Sincerely,

                                    LYLE W. CAYCE, Clerk

                                    By: _____
                                    Whitney M. Jett, Deputy Clerk

cc:
    Mr. Ronald E. Corkern Jr.
    Mr. Dick Dee Knadler
    Ms. Lou Anne Milliman
    Mr. Jack Etherton Truitt



IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**Certified as a true copy and issued as the mandate on** Aug 21, 2020

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

No. 19-30223

_____

D.C. Docket No. 1:16-CV-1142

United States Court of Appeals
Fifth Circuit
**FILED**
July 30, 2020
Lyle W. Cayce
Clerk

LOUISIANA DIVISION SONS OF CONFEDERATE VETERANS,

  Plaintiff - Appellant

v.

CITY OF NATCHITOCHES; LEE POSEY; JOHN DOE #1; JOHN DOE #2; JOHN DOE #3; MICKEY DOVE; SAMANTHA BONNETTE; HISTORIC DISTRICT BUSINESS ASSOCIATION,

  Defendants - Appellees

Appeal from the United States District Court for the
Western District of Louisiana

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

JUDGMENT

  This cause was considered on the record on appeal and was argued by counsel.

  It is ordered and adjudged that the judgment of the District Court is affirmed.

  IT IS FURTHER ORDERED that plaintiff-appellant pay to defendants-appellees the costs on appeal to be taxed by the Clerk of this Court.

JENNIFER WALKER ELROD, Circuit Judge, concurring in part and concurring in the judgment.

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
July 30, 2020
Lyle W. Cayce
Clerk

No. 19-30223

LOUISIANA DIVISION SONS OF CONFEDERATE VETERANS,

    Plaintiff - Appellant

v.

CITY OF NATCHITOCHES; LEE POSEY; JOHN DOE #1; JOHN DOE #2; JOHN DOE #3; MICKEY DOVE; SAMANTHA BONNETTE; HISTORIC DISTRICT BUSINESS ASSOCIATION,

    Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:16-CV-1142

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

    The Louisiana Division Sons of Confederate Veterans appeals the district court's grant of summary judgment dismissing the group's claims that the City of Natchitoches, a local business group, and certain individuals violated the group's First and Fourteenth Amendment rights of free speech and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Case: 19-30223  Document: 00515535990  Page: 2  Date Filed: 08/21/2020
Case 1:16-cv-01142-DDD-JPM  Document 128  Filed 08/21/20  Page 4 of 17 PageID #: 4490

No. 19-30223

due process by denying its application to participate in a Christmas parade. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

The Christmas Festival of Lights Parade is part of an annual event held in Natchitoches, Louisiana. Over the nearly 100 years of its existence, the festival has been hosted by various organizations. In 2014, the Historic District Business Association ("HDBA") in Natchitoches volunteered to take over the coordination and presentation of the festival. The City agreed. A written agreement detailed the division of responsibilities between the City and the HDBA for the festival. The City would provide police and fire protection, electrical and sanitation services, as well as other logistical support. The HDBA was responsible for coordinating all details of the festival, including the parade.

In 2015, the Louisiana Division Sons of Confederate Veterans ("SCV") applied to march in the Christmas Parade. The Louisiana division describes the national organization as "the direct heir of the United Confederate Veterans, and the oldest hereditary organization for male descendants of Confederate soldiers." The state chapter that is the plaintiff here says it is "the premier historical organization located in the State of Louisiana for the safekeeping [of] the memory of the soldier of the Confederate Army. The organization does not represent any racist platform."

Mayor Lee Posey sent a letter to the HDBA Christmas Festival Committee on November 2, 2015, requesting that the committee prohibit the display of the Confederate battle flag in that year's parade, a request applicable to parade marchers and not spectators. Although the SCV

2

Case: 19-30223 Document: 00515535990 Page: 3 Date Filed: 08/21/2020
Case 1:16-cv-01142-DDD-JPM Document 128 Filed 08/21/20 Page 5 of 17 PageID #: 4491

No. 19-30223

had marched in this parade "for many years," this was the first time it was asked to march in the parade with this restriction. Two days after the mayor's letter, the HDBA wrote to the SCV, denying its application to participate in the Christmas Parade.

On August 4, 2016, the SCV filed suit against the City, Mayor Posey, and three John Does whom it described as individuals "officially affiliated with the City" and "responsible for the supervision of the Christmas Festival Committee." The claims were for violations of the SCV's First and Fourteenth Amendment rights. On April 13, 2017, the SCV amended its complaint to include Police Chief Mickey Dove as a defendant. The SCV soon amended its complaint again, this time adding Samantha Bonnette, who was a liaison between the City and the HDBA. This amendment mentioned the HDBA but did not add it as a party. It was not until a third amended complaint, filed on September 29, 2017, that the HDBA was made a defendant.

The City, Mayor Posey, Chief Dove, and Bonnette filed a joint motion for summary judgment, and the HDBA filed a separate motion for summary judgment. The district court granted both motions, and this appeal followed.

## DISCUSSION

We review a grant of summary judgment *de novo*, and we "draw all reasonable inferences in favor of the nonmoving party." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). "[C]onclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Summary judgment is appropriate "if the movant shows

Case: 19-30223　　　Document: 00515535990　　　Page: 4　　　Date Filed: 08/21/2020
Case 1:16-cv-01142-DDD-JPM   Document 128   Filed 08/21/20   Page 6 of 17 PageID #: 4492

No. 19-30223

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## I.   *SCV's claims against the City and City officials*

"A claim under 42 U.S.C. § 1983 has two foundational elements: a violation of the Constitution or of federal law, and . . . that the violation was committed by someone acting under color of state law." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quotation marks omitted). Although municipalities are "persons" within the meaning of Section 1983 and can be sued directly, they are not liable on a theory of vicarious liability or *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).

A municipal liability claim requires proof of "(1) an official policy (2) promulgated by the municipal policymaker (3) [that] was the moving force behind the violation of a constitutional right." *Webb*, 925 F.3d at 214. An official policy may be a written policy, a custom, or, though rarely, a single decision by a final policymaker. *Id.* at 215. Although a policymaker's single decision may be in effect a policy that creates liability for a municipality, the situations to which this exception applies are few and will create "municipal liability only if the municipal actor is a final policymaker." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quotation marks omitted).

To determine whether an official is a final policymaker, this court will "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008).

The action alleged to have caused the violation here is the denial of the SCV's application to participate in the Christmas Parade. The SCV argues that Mayor Posey, Chief Dove, and Bonnette, in their official capacities for the

Case: 19-30223 Document: 00515535990 Page: 5 Date Filed: 08/21/2020
Case 1:16-cv-01142-DDD-JPM Document 128 Filed 08/21/20 Page 7 of 17 PageID #: 4493

No. 19-30223

City, established a policy by denying the SCV the right to participate in the parade. Those City officials, though, were not the ones who denied the SCV's application. The SCV suggests the Mayor established a policy for the City, but the only evidence of such a policy would have been the letter from the Mayor to the HDBA. For the letter to be relevant to this issue, the sender had to be a final policymaker. We examine that possibility, starting with the assumption the Mayor is likely a policymaker as to some matters. Whether the Mayor was for the Christmas Parade is the question.

Both the HDBA and Mayor Posey testified that the Mayor's letter to the HDBA requesting that the HDBA prohibit the display of the Confederate battle flag during the parade was simply a request. According to the Mayor and the HDBA, the decision to deny the SCV's parade application rested with the HDBA, not the City. There is no evidence that the Mayor had control over the HDBA. By the terms of the agreement between the City and the HDBA for the annual festival, the HDBA was tasked with arranging and coordinating the Christmas parade. Nothing in the agreement provided for control or even input by the Mayor or other City officials over approval of applications to participate in the parade. At most, the evidence is that the HDBA accepted the Mayor's request to disallow the display of the Confederate battle flag during the parade.

The concurring opinion, though, concludes that the HDBA's response to the Mayor's request creates a fact question as to whether there was coercion, or at least sufficiently strong "encouragement" that the City could be found to have been the actor who caused the plaintiff injury. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). We do not view the evidence in that way, nor do we give significance to the statement by the HDBA that without the Mayor's letter, the SCV would have been allowed to participate in the parade. Responding agreeably to a request and being all but forced by the coercive power of a

5

Case: 19-30223　　Document: 00515535990　　Page: 6　　Date Filed: 08/21/2020
Case 1:16-cv-01142-DDD-JPM   Document 128   Filed 08/21/20   Page 8 of 17 PageID #: 4494

No. 19-30223

governmental official are different categories of responses, and the scant evidence offered here would not allow a factfinder to hold for the SCV on the point.

Further, the SCV does not demonstrate a genuine dispute of material fact on whether Chief Dove or Bonnette are final policymakers. Chief Dove's only direct involvement with the Christmas Parade was granting the HDBA a permit for the parade. Bonnette had no role in approving or denying applications.

Because the SCV failed to establish an official policy, the district court properly dismissed all of the SCV's Section 1983 claims against the City. It is true that the district court based its ruling largely on the fact that the City is governed under a Home Rule Charter system of government. The district court interpreted that to mean that the Mayor could not be a final policymaker for the City. We do not delve into the effect of this form of government on the case. We choose the alternate basis to affirm that the City was not involved in the decision to deny the SCV the right to participate in the parade. We do so under our authority to affirm a summary judgment "on any grounds supported by the record." *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 323 (5th Cir. 2017).

To the extent that the SCV asserted individual Section 1983 claims against Mayor Posey, Chief Dove, and Bonnette in their official capacities, these claims are treated the same as claims against the City. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Those claims were properly dismissed.

II. *SCV's claims against the HDBA*

The district court concluded that the SCV's claims against the HDBA were barred by the one-year statute of limitations. Because the HDBA notified the SCV of its decision to deny its parade application on November 4, 2015, the

No. 19-30223

SCV had until November 4, 2016 to file suit against the HDBA. *See Jones v. Orleans Par. Sch. Bd.*, 688 F.2d 342, 344 (5th Cir. 1982). The HDBA, though, was not named as a defendant until September 29, 2017. The claims against the HDBA cannot relate back to the original filing because the SCV was adding a new party, not addressing a mistake as to a properly named party. *See Jacobsen v. Osborne*, 133 F.3d 315, 321–22 (5th Cir. 1998).

    We AFFIRM.

No. 19-30223

JENNIFER WALKER ELROD, Circuit Judge, concurring in part and concurring in the judgment:

The panel concludes that the SCV failed to raise a material fact dispute on its claims against the City under the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). It also concludes that the SCV's claims against the HDBA are barred by the statute of limitations. Although I ultimately agree with both conclusions, I am concerned that the panel opinion shortcuts the analysis of whether the City can be liable for the alleged violation in light of the Mayor's letter. I therefore join in the panel opinion as to the SCV's claims against the HDBA and concur in the judgment as to the claims against the City.

"The text and original meaning of [the First and Fourteenth] Amendments, as well as [the Supreme] Court's longstanding precedents, establish that the Free Speech Clause prohibits only *governmental* abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Moreover, a claim under 42 U.S.C. § 1983 can only succeed where "the defendant acted under color of state law." *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989). In this case, the City argues that it cannot be liable for the denial of the SCV's permit application because that denial is not attributable to it, but to a third party: the HDBA.

The SCV, in turn, invokes the state action doctrine, under which private acts may be treated as state acts in certain circumstances. In some cases, the state action doctrine permits a private entity to be sued for its acts as if those acts were those of a state entity. *See Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982). Here, although the SCV argues that the HDBA should be treated as a state entity for purposes of its claims against the HDBA, the court need not

8

Case: 19-30223     Document: 00515535990     Page: 9     Date Filed: 08/21/2020
Case 1:16-cv-01142-DDD-JPM   Document 128   Filed 08/21/20   Page 11 of 17 PageID #: 4497

No. 19-30223

reach that argument because—as the panel opinion well explains—the SCV's claims against the HDBA do not clear the limitations bar.

In other cases, however, the state action doctrine permits a state entity to be sued for the acts of a private entity.[1] *See id.* at 1004–05. As the Supreme Court has explained, a plaintiff may "hold state officials liable for the actions of private parties" where the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[2] *Id.* at 1004. "Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives . . . ." *Id.* at 1004–05.

Here, the SCV has a colorable argument that the Mayor's letter to the HDBA, urging it to restrict the SCV's speech, was "such significant encouragement" that the ultimate permit denial should be attributed to him. *Id.* at 1004. The letter is certainly more than "mere acquiescence"—the Mayor affirmatively requested that the HDBA "not allow the Confederate Flag and all its variations . . . in the Christmas Festival Parade," and followed up with a second letter explaining specific reasons for the request. Because the City provided a number of services supporting the festival (*e.g.*, police, fire, electricity, music, sanitation), the HDBA may have believed that it must acquiesce to the Mayor's request. In fact, the HDBA specifically stated that it would not have denied the permit in the absence of the Mayor's letter.

---

[1] Even if the HDBA were a state entity, the SCV's claims against the City on the basis of the Mayor's letter would fail for the reasons explained *infra*.

[2] This doctrine is separate from *Monell*. *See Rundus v. City of Dallas*, 634 F.3d 309, 312 (5th Cir. 2011) ("In order to show that there is state action, Rundus must show that either: 1) The restriction represents an official City policy or custom, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), or 2) [The private entity's] conduct . . . is 'fairly attributable' to the City. *See Lugar v. Edmondson Oil*, 457 U.S. 922, 937 (1982).").

The majority opinion does not engage with this strain of state action doctrine and instead only applies *Monell*. Under *Monell,* as the majority opinion recounts, the SCV must "demonstrate a dispute of fact as to three elements: that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017). "It is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008). "This inquiry is specific to the particular action at issue, and depends on an analysis of relevant state and local law." *Id.*

The panel opinion determines that the Mayor was not a final policymaker under *Monell* because he did not control the HDBA's decision to deny the SCV's parade application. The question of whether the Mayor is sufficiently connected to the HDBA's decision in the *Monell* context is governed by the third *Monell* factor: whether the official policy "was the moving force behind the violation of a constitutional right." *Davidson*, 848 F.3d at 395.

To show that the official policy was the "moving force" behind the violation, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997). The plaintiff must also show "the requite degree of culpability," which is at least "deliberate indifference to the risk that a violation of a particular constitutional . . . right will follow the decision." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). Again, the SCV has a strong argument on this point. The HDBA's statement that it would not have denied the permit absent the Mayor's letter goes to the direct causal link

Case: 19-30223    Document: 00515535990    Page: 11    Date Filed: 08/21/2020
Case 1:16-cv-01142-DDD-JPM   Document 128   Filed 08/21/20   Page 13 of 17 PageID #: 4499

No. 19-30223

between the two, and it cannot be argued that the Mayor did not affirmatively intend that result—it was the whole point of the letter.

Nevertheless, I ultimately agree with the panel opinion that the SCV has failed to establish a genuine dispute of material fact on the question of whether the Mayor was a final policymaker. The City argues that its "Home Rule Charter" establishes a system in which the Mayor cannot establish official policy in this context without the consent of the City Council—consent that was absent here. The district court granted summary judgment to the City on that basis. As explained above, an inquiry like this "depends on an analysis of relevant state and local law." *Bolton*, 541 F.3d at 548; *see also id.* at 550–51 (concluding that the Dallas City Charter did not give the city manager policymaking authority to make the challenged decision).

The SCV does not provide the relevant state or local law, nor does it point to any record evidence establishing a genuine dispute of fact over whether the Mayor was the final policymaker with regards to the City's position on permit applications or parade speech. The City met its summary judgment burden of showing that, "if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000). It was then the SCV's burden to "set forth specific facts showing a genuine issue for trial." *Id.* Because the SCV set forth no specific facts showing that the Mayor had final policymaking authority under state and local law, it failed to meet that burden. I therefore concur in the panel's judgment of affirmance with respect to the SCV's claims against the City.

I also join the panel opinion with respect to the SCV's time-barred claims against the HDBA. Nevertheless, I write separately to address one of the contentions the HDBA focused on at oral argument: that, even if there was no

11

Case: 19-30223　　Document: 00515535990　　Page: 12　　Date Filed: 08/21/2020
Case 1:16-cv-01142-DDD-JPM   Document 128   Filed 08/21/20   Page 14 of 17 PageID #: 4500

No. 19-30223

limitations bar and the court determined that the HDBA were a state actor, its denial of the SCV's parade application would survive strict scrutiny because of its "concern that the parade was going to be disrupted because of security issues involving . . . protests and the reaction." Oral Argument at 22:54; *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) ("For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.").

The First Amendment does not permit the state to censor speech merely because it is hurtful or offensive, even to stop Nazis from parading down the streets of Skokie, Illinois. *See Nat'l Socialist Part of Am. v. Village of Skokie*, 432 U.S. 43 (1977); *see also Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ("[I]n public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." (alteration in original) (quoting *Boos v. Berry*, 485 U.S. 312, 322 (1988))). Nor can the state indulge the "heckler's veto" by putting prior restraints on controversial speech for fear of an adverse reaction to it. *See Cox v. Louisiana*, 379 U.S. 536, 551 (1965) ("[C]onstitutional rights may not be denied simply because of hostility to their assertion or exercise." (quoting *Watson v. City of Memphis*, 373 U.S. 526, 535 (1963))); *see also Forsyth County v. Nationalist Movement*, 505 U.S. 123, 135–36 (1992) ("Speech cannot be . . . punished or banned . . . simply because it might offend a hostile mob."). This is no less true when expected hostility to the content of public speech will saddle the state with financial costs. *See Forsyth County*, 505 U.S. at 134.

These venerable First Amendment principles have served our nation well and have been applied again and again to reject arguments in the vein of the one made by the HDBA:

Case: 19-30223     Document: 00515535990     Page: 13     Date Filed: 08/21/2020
Case 1:16-cv-01142-DDD-JPM   Document 128   Filed 08/21/20   Page 15 of 17 PageID #: 4501

No. 19-30223

> In authorizing the denial of a permit because the licensor has determined the activity will provoke disorderly conduct in others, the state treads on thin ice. There is a host of Supreme Court cases dealing with the issue of the "hecklers' veto." In almost every instance it is not acceptable for the state to prevent a speaker from exercising his constitutional rights because of the reaction to him by others. . . . The City of Tupelo may not deny a parade permit simply because of the fear of adverse reaction to the marchers by others.

*Beckerman v. City of Tupelo*, 664 F.2d 502, 509–10 (5th Cir. Unit A 1981).

Because the SCV's claims against the HDBA do not survive the limitations bar, the majority opinion does not reach this issue.[3] That is fortunate for the HDBA, as the "thin ice" on which the HDBA rests its alleged compelling interest cannot bear the weight. *Id.* at 509.

---

[3] Nor does the majority opinion reach the predicate issue: whether the HDBA is a state actor for purposes of this case.

Case: 19-30223   Document: 00515535991   Page: 1   Date Filed: 08/21/2020

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Print Form

## BILL OF COSTS

**NOTE:** The Bill of Costs is due in this office *within 14 days from the date of the opinion, See* FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.

LA Division Sons of Confederate Veterans    v. City of Natchitoches, et al    No. 19-30223

The Clerk is requested to tax the following costs against: LA Division Sons of Confederate Veterans

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee | | | | | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | 7 | 50 | .10 | 35.00 | 7 | 50 | .10 | 35.00 |
| Appellant's Reply Brief | | | | | | | | |
| Other: | | | | | | | | |
| | | | Total $ | 35.00 | | | Costs are taxed in the amount of $ | 35.00 |

Costs are hereby taxed in the amount of $ 35.00    this _____ day of _____, _____.

State of
County of ST. TAMMANY

LYLE W. CAYCE, CLERK

By _____
Deputy Clerk

I Jack E. Truitt _____, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 3rd day of August, 2020.

_____
(Signature)

*SEE REVERSE SIDE FOR RULES
GOVERNING TAXATION OF COSTS

Attorney for Historic District Business Association

Print Form

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

## BILL OF COSTS

NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion,* See FED. R. APP. P. & 5ᵀᴴ CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.

LA Division Sons of Confederate Veterans     v. City of Natchitoches, et al     No. 19-30223

The Clerk is requested to tax the following costs against: LA Division Sons of Confederate Veterans

| COSTS TAXABLE UNDER Fed. R. App. P. & 5ᵗʰ Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee | | | | | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | 7 | 36 | .10 | 25.20 | 7 | 36 | .10 | 25.20 |
| Appellant's Reply Brief | | | | | | | | |
| Other: | | | | | | | | |
| | | | Total $ | 25.20 | | | Costs are taxed in the amount of $ | 25.20 |

Costs are hereby taxed in the amount of $ 25.20     this _____ day of _____, _____.

State of Louisiana
County of - Natchitoches

LYLE W. CAYCE, CLERK

By _____
Deputy Clerk

I Ronald E. Corkern Jr. , do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 4ᵗʰ day of August , 2020

(Signature)

*SEE REVERSE SIDE FOR RULES
GOVERNING TAXATION OF COSTS

Attorney for Historic District Business Association